**Gary Daniel SMITH, Plaintiff,**

v.

**ALEXANDRIA ARENA, INC., Defendant.**

**Civ. A. No. 4373.**

United States District Court
E. D. Virginia,
Alexandria Division.

Jan. 8, 1969.

Leonard S. Sattler, Arlington, Va., for plaintiff.

James M. Cashman, Washington, D. C., for defendant.

MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

Gary Smith broke his leg as a result of a fall while on roller skates rented from the Alexandria Arena.

This diversity suit for damages resulting therefrom is predicated upon an implied warranty that the skates rented to the plaintiff were fit for the purpose for which they were intended and upon the alleged negligence of the employees of the Arena in failing to properly inspect, test and examine the skates in question, resulting in the furnishing of a defective skate to the plaintiff.

The accident in question occurred November 23, 1965, at the Alexandria Roller Skating Rink in the City of Alexandria, Virginia. The plaintiff, Gary Smith, had not been on roller skates since his boyhood. His wife skated quite often. They went to the Arena on the day in question for the purpose of roller skating. The plaintiff bought two admission tickets and one ticket for a pair of rental skates. His wife brought and used her own roller skates. He used the rental skates.

The plaintiff gave his foot size to the attendant and got the skates. He says the attendant made no examination of the skates. In putting them on he noticed nothing wrong with the skates except the shoelaces. He says they had no tips and he had difficulty in lacing the shoes. He then proceeded to skate slowly around the rink with his wife. He fell a couple of times—backwards—sort of sit-down on the floor. Some fifteen or twenty minutes later he felt his right foot going around his left foot. He claims he could not control the skate; his left foot was twisted and he fell forward. He dragged himself to the rail and noticed that the rear assembly of his right skate was loose—spinning around—when someone took the skate off his foot.

He was skating so slowly that his wife skated on ahead. She was not with him when he fell. She was some 160 feet away. She claims she did see him lunge forward. She immediately went over to where he had fallen and saw the rear assembly on one of his skates spinning around.

The plaintiff received a broken leg. It happened so suddenly that he could not say whether the leg was broken as a result of the twist or from the fall when he lunged forward. The examining physician described the broken leg as a spiral fracture resulting from a twist. He required hospitalization on two occasions. A metal pin was inserted in the broken bone—it is still there. As a result of the break that leg is now about a half inch shorter than the other leg. The metal pin causes no difficulty at the present time. The attending physician believes that it should remain in the bone unless it causes future harm—then it should be removed. This will necessitate another operation. The leg has otherwise mended well—the shortening is of no particular moment—the body compensates for this deficiency.

The plaintiff's medical expenses were $1,144.10. His out-of-pocket expenses, including loss of earnings, total $4,126.10. He was out of work approximately three and a half months.

The rented skate was introduced in evidence. Several former employees, including skate-room attendants, at the Arena were called by the plaintiff. There were no eye-witnesses to this accident. Several witnesses heard the fall and saw the plaintiff on the floor with the broken skate on his foot. All of the plaintiff's witnesses who had had experience in repairing roller skates of the type rented and who were familiar with the custom and practice of the defendant in renting skates testified that the attendants made a visual inspection of the skates at the time they were rented. They spun the wheels to see if the bearings were okay and took hold of the trucks to see if they were too tight or too loose. They did not then check the lock nut with a wrench. If a customer complained about a skate feeling loose the defendant would then tighten the lock nut with a wrench. The attendants were supposed to make a similar check of the skates when they were returned. They did not always do so if they were real busy.

All of the plaintiff's witnesses were of the opinion that if the lock nut was

properly locked the kingpin could not be loosened by ordinary skating. They were also of the opinion that if the lock nut was loose vibration from skating would have a tendency to further loosen the lock nut, resulting in the kingpin dropping out of its socket. All of them were also of the opinion that one could not determine by a visual check whether or not the lock nut was properly locked.

The manager of the Arena admitted that the lock nuts on rental skates were not usually checked with a lock wrench at the time when they were given out. He said they were checked periodically with a lock wrench while in the rental box. He said the employees made a visual check, spun the wheels and twisted the trucks to see if the skates were okay before being given to customers.

The attendant on duty on the date of the accident had no independent recollection of giving out the skates in question. He remembers the accident by hearing the fall and seeing the broken skate after the accident. He testified that he always checked the skates for broken laces, broken eyelets, scuffed toes, and rolled the wheels for bad bearings and ·twisted the trucks to see if they were too loose or too tight, when giving out rental skates. He trusted his eyes—he did not use a wrench in making the inspection—he was supposed to make the same type of inspection when the skates were returned but he did not do so if he was very busy. This attendant further stated that he tightened just about every pair of skates with a lock wrench some time during the day.

The defendant claims that the plaintiff lost his balance and that the truck on the broken skate was damaged when the plaintiff's foot struck the floor with great force. They claim he fell backward. This, they say, was evidenced by the fact that the kingpin on the damaged skate was bent forward. Their expert witness so opined.

■ Although the defendant has no burden or duty in a case of this kind to establish the cause of the accident, its proffered evidence in this field should encompass more than surmise and conjecture.

All of the expert opinions rendered herein except one indicate that the skate was defective at the time it was delivered to the plaintiff.

There was no evidence in this case, except what was usually done, that the skates were inspected prior to being given to Smith—he says they were not. If they were, the inspection was perfunctory at best.

■ From the findings here made the Court concludes that the Arena created a bailor-bailee relationship for the mutual benefit of the parties upon the renting of the skates in question. The warranty in such a case is that the article rented is reasonably fit for the purpose for which it was intended. A warranty of fitness for use arises in cases of bailment as well as in sales. See In re People, by Phillips, 250 N.Y. 410, 165 N.E. 829, and cases cited therein.

■ The Court further concludes that the plaintiff has carried the burden of proving the breach of the implied warranty and the negligence of the defendant's employees in failing to properly inspect, resulting in the furnishing of a defective skate which proximately caused the injuries complained of.

The Court awards damages in the sum of $17,500.00. Judgment for this amount, together with taxable costs, will be entered against the defendant.

Counsel for the plaintiff should prepare an appropriate order in accordance with this memorandum opinion, submit it to counsel for the defendant for approval as to form, and then to the Court for entry.